**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In Re the Application of NATALIA POTANINA for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782(a)

No. 14-MC-50276 (VAR)
Hon. Victoria A. Roberts
Magistrate Judge R. Steven Whalen

## COSMOPOLITAN TRAVEL & TOURS INC.'S AND NIKOLAI ATANASSOV'S MOTION TO VACATE MARCH 5, 2014 *EX PARTE* ORDER AND TO QUASH OR STAY THE SUBPOENAS AND, IN THE ALTERNATIVE, FOR OTHER APPROPRIATE RELIEF

Non-Party Respondents Cosmopolitan Travel & Tours Inc. ("Cosmopolitan") and Nikolai Atanassov (collectively, "Respondents"), by their counsel, respectfully file this Motion to vacate this Court's *ex parte* Order of March 5, 2014 (ECF No. 3, the "Order"), granting discovery pursuant to 28 U.S.C. § 1782(a) ("Section 1782"), and to quash or stay the subpoenas issued thereunder and, in the alternative, and for other appropriate relief (the "Motion"). For the reasons stated more fully in the accompanying Brief, this Court can and should: (1) grant Respondents' Motion and vacate its Order and quash or stay the subpoenas; or (2) in the alternative, and without prejudice to the above, should this Court conclude that any Section 1782 discovery is appropriate, limit discovery as set forth in Respondents' Brief. Should any discovery be ordered, this Court should stay its decision pending a timely appeal to the United States Court of Appeals for the Sixth Circuit. This motion is based upon 28 U.S.C. §§ 1651 and 1782, Fed. R. Civ. P. 26, 34, and 45, Fed. R. App. P. 8(a), this Court's prior orders in this matter, the Declaration of Nikolai Atanassov and annexed exhibits, the Declaration of Yeugenia Shvets

and annexed exhibits, the Declaration of Professor Olga A. Dyuzheva and annexed exhibit, the annexed Brief, and the entire record of proceedings in this matter and such other matters of record and otherwise as to which this Court may take judicial notice.

Respondents believe that oral argument on the issues presented in this Motion and the annexed Brief would assist the Court and Respondents and respectfully request an opportunity to present oral argument on this Motion.

Respectfully submitted,

BOWMAN AND BROOKE LLP

By:     /s/ Thomas P. Branigan
        Thomas P. Branigan (P41774)
        Lawrence C. Mann (P32223)
        Attorneys for Respondents and Movants
             Cosmopolitan Travel & Tours, Inc. and Nikolai
             Atanassov
        41000 Woodward Ave., Suite 200 East
        Bloomfield Hills, MI 48304
        248.205.3300 ph / 248.205.3399 fax
        tom.branigan@bowmanandbrooke.com
        larry.mann@bowmanandbrooke.com

        DEBEVOISE & PLIMPTON LLP
        Steven S. Michaels*
        Yeugenia (Jane) Shvets*
        919 Third Avenue
        New York, NY 10022
        Tel.:  +1 (212) 909-7265
        Fax:  +1 (212) 909-6836
        ssmichaels@debevoise.com
        jshvets@debevoise.com

        *Admission pending

        *Counsel for Movants and Subpoena Respondents
        Cosmopolitan Travel & Tours Inc. and Nikolai Atanassov*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re the Application of NATALIA POTANINA For an Order to Take Discovery Pursuant to 28 U.S.C. § 1782(a) | No. 14-MC-50276 (VAR) Hon. Victoria A. Roberts Magistrate Judge R. Steven Whalen |

## BRIEF IN SUPPORT OF COSMOPOLITAN TRAVEL & TOURS INC.'S AND NIKOLAI ATANASSOV'S MOTION TO VACATE MARCH 5, 2014 *EX PARTE* ORDER AND TO QUASH OR STAY THE SUBPOENAS AND, IN THE ALTERNATIVE, FOR OTHER APPROPRIATE RELIEF

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................3

    I.    The Russian Divorce Proceeding.................................................................3

    II.    Russian Asset Division Proceedings...........................................................4

    III.    Discovery Sought from Respondents and Other Entities .............................6

ARGUMENT ......................................................................................................8

    I.    Because Petitioner Has Not Sufficiently Identified the Foreign Proceeding for Which She Seeks Discovery, the Court Must Dismiss Her Petition or Direct Petitioner to Amend It ...............................................................................8

    II.    The *Intel* Factors Weigh Heavily in Support of Quashing the Subpoena...................10

        **A.**    The Subpoenas Improperly Ask This Court to Interfere in a Foreign Matrimonial Action...............................................................11

        **B.**    Under *Intel* Analysis, the Instant Discovery Is Improper...................................13

            **1.**    The Subpoenas Improperly Seek Information Petitioner Should Seek from Potanin...................................................................14

            **2.**    The Subpoenas Should Be Quashed or Stayed as Premature Based on the Nature and Early Stage of the Foreign Proceedings. .....................15

            **3.**    The Discovery Requested Is Unduly Burdensome...................................19

    III.    Alternatively, the Court Should Stay Discovery or Limit Petitioner's Requests to the Categories of Discovery Contingently Agreed by the Parties .........................20

        **A.**    To the Extent the Dispute Over ESI Discovery Persists, the Court Should Deny It as Improper. ...................................................21

        **B.**    The Court Should Deny Petitioner's Request to Depose Atanassov as Waived and Alternatively as Improper.........................22

    CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

CASES

*Adv. Micro Devices, Inc. v. Intel Corp.*, No. C01-7033, 2004 WL 2282320 (N.D. Cal. 2004) ................................................................................................................11

*Aldunate v. Aldunate*, 3 F.3d 54 (2d Cir. 1993) ......................................................16

*Am. Airlines, Inc. v. Block*, 905 F.2d 12 (2d Cir. 1990)...........................................12

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) ................................................11, 12

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ................13

*Chambers v. Michigan*, 473 F. App'x 477 (6th Cir. 2012)........................................12

*Convertino v. U.S. Dep't of Justice*, No. 07-13842, 2013 WL 153311 (E.D. Mich. 2013)..........23

*Csibi v. Fustos*, 670 F.2d 134 (9th Cir. 1982)...........................................................12

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) ....................................12

*Firestone v. Cleveland Trust Co.*, 654 F.2d 1212 (6th Cir. 1981) ...........................12

*Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187 (S.D. Ohio 2010) ......24

*In re Apotex Inc.*, No. M12-160, 2009 WL 618243 (S.D.N.Y. 2009) .........................10

*In re App. of Auto-Guadeloupe*, No. 12 MC 221 2012 WL 4841945 (S.D.N.Y. 2012) ...............19

*In re App. of Kreke Immobilien KG*, No. 13-Misc-110, 2013 WL 5966916 (S.D.N.Y. 2013) ............18, 20

*In re App. of Mare Shipping Inc.*, No. 13-Misc-238, 2013 WL 5761104 (S.D.N.Y. 2013) ..........18

*In re App. of Natalia Potanina*, No. 14-Misc-127 (E.D.N.Y. Feb. 4, 2014) .................................6

*In re App. of Natalia Potanina*, No. 14-Misc-31 (S.D.N.Y. Feb. 3, 2014)...................................6

*In re App. of Natalia Potanina*, No. 14-Misc-50 (W.D. Pa. Feb. 12, 2014)................................6

*In re App. of Natalia Potanina*, No. 1:14-Misc-0005-CMH-TRJ (E.D. Va. Feb. 12, 2014)..........6

*In re App. of Natalia Potanina*, No. 4:14-Misc-429 (S.D. Tex. Feb. 12, 2014) ...........................6

*In re App. of Natalia Potanina*, No. 5:14-Misc-3 (N.D. Tex. Feb. 12, 2014) ..............................6

*In re App. of Natalia Potanina*, No. CV-14-19 (D. Mont. Feb. 12, 2014) ....................................6

*In re App. of Nokia Corp.*, No. 1:07-MC-47, 2007 WL 1729664 (W.D. Mich. 2007)..............8, 11

*In re App. of OOO Promnefstroy*, No. M-19-99-RJS, 2009 WL 3335608 (S.D.N.Y. 2009) ........11

*In re App. of Parmalat Brasil S.A.*, No. 11-Misc-00077-P1 (S.D.N.Y. 2011) ............................16

*In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007)....................................................................8

*In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2008 WL 4861544
    (D. Del. 2008) .........................................................................................................................10

*In re App. of IPC Do Nordeste, LTDA*, No. 12-50624, 2012 WL 4448886 (E.D. Mich.
    2012) ................................................................................................................... *passim*

*In re Kivisto*, 521 F. App'x 886 (11th Cir. 2013) .......................................................................10

*In re Law Firms of McCourts & McGrigor Donald,* No. M19-96, 2001 WL 345233
    (S.D.N.Y. 2001) .......................................................................................................................25

*In re Mak*, No. C12-80118, 2012 WL 2906761 (N.D. Cal. 2012)...............................................17

*In re Marano*, No. CV-09-80020-Misc, 2009 WL 482649 (N.D. Cal. 2009) .............................17

*In re Microsoft Corp.*, 428 F. Supp. 2d 188(S.D.N.Y. 2006) .......................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..................................... *passim*

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) ...........................................................................22

*Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004)......................................20

*Kwong Mei Lan Mirana v. Battery Tai-Shing Corp.*, No. C08-80142-Misc, 2009 WL
    290459 (N.D. Cal. 2009)..........................................................................................................17

*Legal Voice v. Stormans Inc.,* 738 F.3d 1178 (9th Cir. 2013) .....................................................25

*London v. Does 1-4*, No. 07-15164, 2008 WL 2178602 (9th Cir. 2008)......................................17

*Malev Hung. Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97 (2d Cir. 1992) .............................20

*Overseas Media Inc. v. Skvortsov*, 441 F. Supp. 2d 610 (S.D.N.Y. 2006)...................................13

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973)................12

*Schmitz v. Bernstein Liebhard & Lifshitz*, 376 F.3d 79 (2d Cir. 2004) ........................................14

**STATUTES & RULES**

28 U.S.C. § 1782 ...................................................................................... *passim*

Fed. R. Civ. P. 45(d) ......................................................................................20

Fed. R. Civ. P.  30(b)(6)..................................................................................23

## STATEMENT OF THE ISSUES PRESENTED

1. Whether this Court should vacate its order and dismiss this proceeding or direct Petitioner to amend it to identify a specific court proceeding in aid of which this Section 1782 discovery application should continue;

**Respondents answer "Yes"**

**Petitioner answers "No"**

2. Whether this Court should vacate its March 5, 2014 Order granting discovery and quash or stay the discovery in light of the principles underlying the domestic relations exception to federal authority and related abstention doctrines;

**Respondents answer "Yes"**

**Petitioner answers "No"**

3. Whether, pursuant to the discretionary analysis set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Court should independently quash or stay the discovery;

**Respondents answer "Yes"**

**Petitioner answers "No"**

4. Whether, if the Court grants none of the above relief, it should nevertheless limit the discovery to the terms contingently agreed by the parties as set forth fully below.

**Respondents answer "Yes"**

**Petitioner answers "No"**

## PRELIMINARY STATEMENT

On March 5, 2014, this Court granted the *ex parte* application of Natalia Potanina ("Petitioner") to serve subpoenas pursuant to 28 U.S.C. § 1782 ("Section 1782") on Cosmopolitan Travel & Tours, Inc. ("Cosmopolitan") and Nikolai Atanassov ("Atanassov"), its owner (collectively, "Respondents").  Cosmopolitan is a small travel agency incorporated in 1993 and located in West Bloomfield, Michigan.  Atanassov is the sole owner of Cosmopolitan and, along with his wife, one of its two employees.  *See* Declaration of Nikolai Atanassov ("Atanassov Decl.") ¶¶ 1, 4.  Respondents submit this memorandum in support of their motion to vacate this Court's March 5, 2014, *ex parte* Order (the "Order"), to quash or stay the subpoenas issued thereunder and, in the alternative, for other appropriate relief as set out below.

As stated in Respondents' March 27, 2014 Report to the Court, *see* Dkt. 12, the Court's March 20 Order requiring the parties to engage in substantive meet-and-confer discussions regarding the requested discovery, *see* Dkt. 11, has been of substantial assistance.  The parties' meet-and-confer discussions have resulted in a narrowing of the proposed discovery, should this Court conclude, under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), that any discovery in this case is lawful and appropriate.

Not having had an opportunity to obtain this Court's judgment on the threshold questions, Respondents respectfully seek, in the first instance, this Court's judgment that no Section 1782 discovery should be ordered, or ordered at this time.  *First*, there is no genuine dispute that the Russian divorce proceeding on which Petitioner's application was predicated has concluded with the issuance of a divorce decree, and no assets were at issue in that proceeding.  Petitioner, therefore, can no longer be seeking discovery from Respondents in aid of that proceeding.

*Second*, there is evidence that Petitioner is not seeking discovery from Respondents for use in *any* proceeding that is pending or reasonably contemplated before an identifiable tribunal

in Russia or elsewhere.  Although press reports state that Petitioner's ex-husband, Vladimir

Potanin ("Potanin") has initiated an asset division proceeding in Russia, *see* Declaration of

Yeugenia Shvets ("Shvets Decl.") Ex. 1,[1] the declaration of Professor Olga A. Dyuzheva, who

has taught Russian family law and civil law for over 30 years, establishes that Petitioner faces no

imminent deadlines in Russia or any prejudice regarding that or any other Russian proceeding.

Indeed, Petitioner's Russian counsel stated to the press that Petitioner intends to search for

Potanin's assets "in various jurisdictions" and may bring unspecified proceedings for division of

assets in unspecified countries at some indeterminate future point.  Ex. 2.  Section 1782 does not

permit such a free-floating fishing expedition.  Under Section 1782 jurisprudence and basic

jurisdictional principles, Petitioner must identify the foreign proceeding – including, at a

minimum, the country and court in which that proceeding is pending or will be filed – in aid of

which she seeks discovery.  Otherwise, it is impossible for this Court to determine if the statutory

"for use" prerequisite is present or to exercise its discretion under *Intel*.

   *Third*, even if Petitioner were permitted to – and then did – amend her application to seek

discovery in aid of the pending Russian asset division proceeding, Section 1782 discovery should

be denied in light of the matrimonial nature of the underlying proceedings and application of

*Intel*'s discretionary factors, as set forth below.

   Without conceding discovery is appropriate, Respondents respectfully submit the Court

should, at a minimum, credit the parties' contingent agreement and limit discovery, if ordered, to

(1) documents showing incoming payments for travel and expenses of Potanin, Petitioner, and

their children or grandchildren made to Respondents' bank accounts for the period from January

1, 2007 to the present, as well as emails between Respondents and two individuals identified by

---

[1]     Citations to "Ex." refer to the exhibits to the annexed Declaration of Yeugenia Shvets.

Petitioner's counsel, Elena Kondratova and Svetlana Ermakova, relating to such transactions, and (2) documents showing Respondents' payments to hotels, schools, tutors, and real estate agents relating to travel or expenses of Potanin, Petitioner, and their children or grandchildren for the period from January 1, 2010 to the present, which would include Respondents' credit card statements showing the payments to the above-mentioned vendors and other documents such as invoices, hotel confirmations, and emails relating to such payments.

To the extent that a dispute regarding the discovery of Respondents' electronically stored information, *see* Dkt. 12 at 8, still exists (and it appears that it does not, in light of the Petitioner's statements to this Court earlier today, *see* Dkt. 13 at 3), the Court should deny such discovery as unduly burdensome under the circumstances. Further, Respondents respectfully submit that Petitioner has waived any request for Atanassov's deposition, and to the extent she has not, any request for his deposition should likewise be denied as unduly burdensome given that it is irrelevant to Petitioner's stated discovery aims.

## BACKGROUND

### I.  THE RUSSIAN DIVORCE PROCEEDING

In her Section 1782 application, Petitioner sought discovery "for potential use in a pending divorce action in the Presnensky District Magistrate Court in Moscow, Russia," Dkt. 2-2, Declaration of Natalia Potanina ("Potanina Decl.") ¶ 1, which Potanin had commenced on November 21, 2013, *see* Dkt. 2-8, Complaint for Dissolution of Marriage ("Complaint"). Potanin's Complaint stated that marital relations between the spouses had ceased in January 2007. *Id.* The Complaint was "accepted for adjudication" by a Magistrate Judge on November 25, 2013. *Id.*, Ruling, Nov. 25, 2013. At the subsequent hearing, which the court closed to the public to protect confidentiality, the Magistrate Judge held that "claims regarding the division of property . . . have not been asserted" in the case. *Id.*, Court Hearing, Dec. 25, 2013, ¶¶ 4, 25.

3

The court adjourned the case to February 25, 2014, Dkt. 2-2, Potanina Decl. ¶ 21, ordering a two-month reconciliation period, Dkt. 2-8, Court Hearing, Dec. 25, 2013, ¶ 29.

On February 25, 2014, *before* Petitioner filed her Section 1782 application in this matter, the Magistrate Judge held the final hearing in the proceeding, issuing a divorce decree and awarding child support equal to one-fourth of Potanin's income, payable by Potanin to his minor son who resides with Petitioner. Exs. 1, 2. Potanin's counsel has stated such support will amount to approximately 8.5 million rubles, roughly $236,000 per month, or almost $3 million per year. Ex. 2. The Magistrate Judge found that "any marital and family relations between the parties have been discontinued since January 2007, as evidenced by the residential space lease agreements produced during the court hearing." Ex. 3 at 2.

## II.   RUSSIAN ASSET DIVISION PROCEEDINGS

On February 25, 2014, the press reported that Potanin initiated an asset division proceeding in a district court in Moscow, Russia, Exs. 1, 2, in which Petitioner is reported to be expected to receive 2.5 billion rubles, or approximately $70 million, Ex. 4. This settlement would add to Petitioner's already-considerable personal wealth, as evidenced by the January 2014 closing on an estate in Oyster Bay, Long Island, for $6 million. Ex. 5. A "pre-trial preparation" hearing in Potanin's asset division case was set for March 13, 2014, Ex. 4, but Petitioner's representatives did not then appear. Petitioner's Russian divorce counsel, Filip Ryabchenko, explained the absence on the ground that Petitioner and her representatives did not receive sufficient notice of the March 13 hearing. Ex. 6. Petitioner's U.S. counsel apparently were aware of the March 13 hearing as of February 25, 2014, however, when they cited that hearing date as the reason to urge the U.S. District Court for the District of Montana to expedite Section 1782 discovery in that District. Ex. 7 at 3. The pre-trial preparation hearing has now been rescheduled for April 14, 2014. Ex. 6.

4

As set forth in Professor Dyuzheva's declaration, an asset division proceeding can be filed by either ex-spouse at least "up to three years after the divorce decree is issued." Declaration of Olga A. Dyuzheva ("Dyuzheva Decl.") ¶ 5.  More specifically, proceedings for the division of marital assets that have not already been divided by a court can be brought up to three years from (1) the issuance of the divorce decree, or (2) the date when the petitioning ex-spouse learned or should have learned about an infringement of his/her rights to marital assets, *whichever is longer*.  *Id.*  Even if a proceeding for the division of some marital assets is initiated by an ex-spouse, the other ex-spouse retains the right to seek division of *other* marital assets.  That is, "Russian law allows for, and contemplates, successive claims and proceedings for division of marital assets, until all marital assets are divided."  *Id.* ¶ 6.

In sum, Petitioner can bring claims relating to division of assets she claims are marital in the ongoing asset division proceeding – which may last from three and a half months to two years, depending on the extent of the parties' disagreements, *id.* ¶ 8 – or in a new proceeding later, *id.* ¶ 7.  Petitioner thus has until at least February 2017 to seek division of marital assets.

That Petitioner appreciates the flexibility Russian law offers is illustrated by her Russian representatives' statements.  As noted in the press, Mr. Ryabchenko, "confirmed his client's intent to find Mr. Potanin's assets 'in various jurisdictions,'" including in the United States and, with assistance of investigators, "around the world."  Ex. 2.  Mr. Ryabchenko is quoted as saying that Petitioner "wants first to collect information about Mr. Potanin's assets and their structure; *only then* would the decision about filing an appropriate lawsuit be made."  *Id.* (emphasis added). Mr. Ryabchenko estimated that information gathering could take two months and "did not exclude the possibility that the claim for division of assets would be filed outside of Russia."  *Id.*

Although Mr. Ryabchenko's statements cast doubt on whether discovery in this District is sought in aid of *any* currently pending or anticipated asset division proceeding in Russia, Russia's Family Code sets forth a "comprehensive legal regime for the division of marital assets," including "definition of marital assets" and "the procedure for their division." Dyuzheva Decl. ¶ 4. It also provides that the court presiding over an asset division proceeding may rule that "all assets acquired by either of the spouses after their separation" are not "marital assets to be divided between the parties." *Id.* ¶ 9. If the court so rules, evidence concerning post-separation assets "would not be relevant to the proceeding and would not be considered." *Id.*

Here, the Magistrate Judge in the Potanins' divorce proceeding already has ruled, based on the evidence presented to her, that "marital and family relations between [Petitioner and Potanin] have been discontinued since January 2007." Ex. 3 at 2. That decision, once in force, will bind the district court considering the current asset division claim, and any other Russian court adjudicating asset-related claims between Petitioner and Potanin. Dyuzheva Decl. ¶ 13.

## III.  DISCOVERY SOUGHT FROM RESPONDENTS AND OTHER ENTITIES

To date, Petitioner has commenced eight Section 1782 proceedings in federal district courts in pursuit of "discovery regarding marital assets" for potential use in her foreign divorce proceeding, Dkt. 1, App. for Disc. 1,[2] which she asserts that Respondents possess because they allegedly assisted Potanin and Petitioner in making travel and related arrangements, Dkt. 2, Mem. of Law 8. As Petitioner has continued to file numerous Section 1782 proceedings – against 17 respondents thus far – the connection between those respondents and Petitioner's

---

[2]      *See also In re App. of Natalia Potanina*, No. 14-Misc-31 (S.D.N.Y. Feb. 3, 2014); *In re App. of Natalia Potanina*, No. 14-Misc-127 (E.D.N.Y. Feb. 4, 2014); *In re App. of Natalia Potanina*, No. 14-Misc-50 (W.D. Pa. Feb. 12, 2014); *In re App. of Natalia Potanina*, No. CV-14-19 (D. Mont. Feb. 12, 2014); *In re App. of Natalia Potanina*, No. 4:14-Misc-429 (S.D. Tex. Feb. 12, 2014); *In re App. of Natalia Potanina*, No. 1:14-Misc-0005-CMH-TRJ (E.D. Va. Feb. 12, 2014); *In re App. of Natalia Potanina*, No. 5:14-Misc-3 (N.D. Tex. Feb. 12, 2014).

stated claim of locating her "marital assets" has become ever more attenuated.  In the Section 1782 proceeding in this District, the last-filed such proceeding to date, Petitioner is seeking discovery regarding her marital assets from a two-person travel agency and its owner, who book travel, accommodation, and other services for hundreds of clients.  Requesting discovery from Respondents regarding Petitioner's "marital assets" is no different from seeking discovery from airlines, hotels, and restaurants for flights, accommodation, and dining provided to Potanin because those vendors may have been reimbursed from accounts associated with Potanin.

Because the subpoenas served on Respondents requested broad-ranging discovery with little relevance to Petitioner's "martial assets" and without time limits in most instances, Respondents objected to that discovery.  Pursuant to this Court's March 20 Order, *see* Dkt. 11, the parties' counsel met and conferred extensively regarding the scope of the requested discovery, *see* Dkt. 12.  It is undisputed that those meet and confer discussions resulted in Petitioner focusing her overbroad document requests to two categories of documents:  (1) those related to Respondents' incoming payment information for travel expenses for a period of over seven years and (2) Respondents' payments to certain vendors for a period of over four years. *See infra* at 21.  In the course of these conferences – occurring at least once every weekday since the receipt of the Court's March 20 Order – Petitioner's counsel never mentioned any request to depose Atanassov – a request that by the counsel's own admission was explicitly addressed in meet-and-confer discussions in other Section 1782 proceedings.  *See* Dkt. 13 at 2.  Petitioner also did not mention that request in a March 26 letter "memorializing Mrs. Potanina's position" regarding Petitioner's discovery requests.  Dkt. 12-4 at 1.

The deposition request was brought up for the first time in the March 27 meet-and-confer call after Respondents agreed – if the Court found discovery appropriate – to produce the two

categories of documents as a global settlement.  Dkt. 12 at 7.  Although that latest discussion also

left unresolved the issue of forensic imaging of Respondents' computer records or additional

discovery of electronically stored information (collectively, "ESI Discovery"), *see id.* at 8-9, it

appears that Petitioner has waived ESI Discovery in statement filed with this Court earlier today,

which requests judicial assistance only to resolve the deposition-related dispute, *see* Dkt. 13 at 3.

### ARGUMENT

I. **BECAUSE PETITIONER HAS NOT SUFFICIENTLY IDENTIFIED THE FOREIGN PROCEEDING FOR WHICH SHE SEEKS DISCOVERY, THE COURT MUST DISMISS HER PETITION OR DIRECT PETITIONER TO AMEND IT**

Although the Court granted Petitioner's request for Section 1782 discovery *ex parte*,

"now that respondents have . . . an opportunity to be heard, it is clear that petitioner[], who ha[s]

the burden of proof, ha[s] not in fact adequately shown that" Section 1782 discovery is

appropriate.  *In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007); *see In re App. of Nokia

Corp.*, No. 1:07-MC-47, 2007 WL 1729664, at *4 (W.D. Mich. 2007) (court may reexamine

findings in *ex parte* Section 1782 applications on fuller record).  Discovery here is inappropriate

for many reasons, including that, following the conclusion of the Russian divorce proceeding on

which the instant petition was based, the "for use" requirement of the statute is not satisfied.

A threshold requirement for discovery under Section 1782 is that it must be "for use in a

proceeding in a foreign or international tribunal."  *Intel*, 542 U.S. at 246 (internal quotation

marks omitted).  Given that Petitioner sought discovery in aid of a now-concluded divorce

proceeding, *see supra* at 3-4, the instant applications, if not amended, should be denied as moot.[3]

---

[3]     In Petitioner's opposition to Norilsk Nickel USA Inc.'s ("Norilsk USA") motion to
vacate the *ex parte* order and to quash or stay the subpoena issued thereunder, Petitioner's
Russian divorce counsel stated that Petitioner intends to appeal the Magistrate Judge's ruling in
the divorce proceeding.  *See* Dkt. 25-1, No. 14-MC-50 (W.D. Pa.), Ryabchenko Decl. ¶ 22.
Petitioner does not state, however, that the discovery she seeks from various third parties in the

If Petitioner now asserts that discovery is sought for the pending asset division proceeding in Russia – a claim she advanced for the first time in response to Norilsk USA's mootness argument, *see* Dkt. 25, No. 14-MC-50 (W.D. Pa.), Mem. of Law 10 – her assertions would be entirely unsupported because she has not submitted a sworn declaration to that effect or amended her application in any of her Section 1782 proceedings.  Indeed, in her application to this Court filed on March 1, Petitioner maintained, as she did in all previous *ex parte* filings, that discovery was for use in "the divorce proceedings currently underway in the Moscow Court" (defined as the "Presnensky District Magistrate Court in Moscow, Russia"), Dkt. 2, Mem. of Law 2, 5, even though by then the Moscow court had held its final hearing and issued the divorce decree, and an asset division proceeding had been initiated in another Moscow court, *see supra* at 4.  The definition of "Moscow Court" in her application gives no notice of an intent to file in any court other than the Presnensky District Magistrate Court.[4]

Nor has Petitioner submitted any declaration explaining which, if any, of the broad categories of documents sought from Respondents are urgently needed for the now-pending asset division proceeding in Russia, despite having Russian matrimonial counsel who previously had submitted a declaration to this Court.  *See* Dkt. 2-6.  In fact, statements made by Petitioner's Russian divorce counsel indicate that Petitioner has not yet decided to commence proceedings

---

United States is, or can be, for use in that appeal.  In fact, Petitioner's Russian divorce counsel admitted that "asset division . . . was not before the Magistrate Court."  *Id.* ¶ 21.

[4]     Petitioner's Norilsk USA opposition brief contains a number of vague statements about the purpose of the discovery she seeks, including that it may be used "to commence a later marital asset division proceeding."  Dkt. 25, No. 14-MC-50 (W.D. Pa.), Mem. of Law 10. Respondents expect that similarly vague statements would be made to this Court, but they do not detract from the fact that Petitioner is not seeking – and likely never sought – discovery from this Court in aid of the Presnensky District Magistrate Court proceeding, which she listed on her Section 1782 applications to this Court *after that proceeding had already concluded and an asset division proceeding had been commenced in a different Russian court*.

concerning the assets on which she seeks discovery, and that if she ultimately does so, it may be in a jurisdiction that has not yet been identified.  *See supra* at 5.

Although Section 1782 discovery can be ordered when requested in aid of foreign proceedings that are within "reasonable contemplation," *Intel*, 542 U.S. at 247, such proceedings must be identified with sufficient particularity to enable the Court to exercise its *Intel* discretion. In *Intel*, the Supreme Court directed district courts to consider such factors as whether the respondent is a participant in the foreign proceeding, the nature of the foreign tribunal and the character of the proceedings abroad, and whether the Section 1782 request is an attempt to circumvent that tribunal's proof-gathering restrictions.  *See infra* at 11.

This Court cannot evaluate any of these factors if Petitioner does not specify in what jurisdiction and court the proceeding would be commenced, when, against whom, and on what grounds.  *See, e.g.*, *In re Kivisto*, 521 F. App'x 886, 889 (11th Cir. 2013) ("We expect the district [court to] . . . deny the request when it suspects that the request is a fishing expedition or a vehicle for harassment." (citation omitted)); *In re Apotex Inc.*, No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. 2009) ("[I]f the district court determines that [a Section 1782 application] is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." (citation omitted)); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2008 WL 4861544, at *15, *17 (D. Del. 2008) ("reasonable contemplation" requirement not met when Petitioner "assert[ed] that it *may* bring suit in either one of two different forums . . . for unknown claims, at some point" (emphasis in the original)).

## II.    THE *INTEL* FACTORS WEIGH HEAVILY IN SUPPORT OF QUASHING THE SUBPOENA

Even if Section 1782's threshold requirements were met, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so"; rather, it

must "ensure an airing adequate to determine what, if any, assistance is appropriate." *Intel*, 542 U.S at 264, 266; *see Adv. Micro Devices, Inc. v. Intel Corp.*, No. C01-7033, 2004 WL 2282320, at *2 (N.D. Cal. 2004) (denying all discovery on remand).  Federal courts have "broad discretion over the issuance of discovery orders pursuant to § 1782(a)." *In re App. of OOO Promnefstroy*, No. M-19-99-RJS, 2009 WL 3335608, at *4 (S.D.N.Y. 2009) (citation omitted); *see also In re App. of IPC Do Nordeste, LTDA*, No. 12-50624, 2012 WL 4448886, at *5 (E.D. Mich. 2012) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court." (internal quotation marks omitted)).

In *Intel*, the Supreme Court articulated the following considerations to guide courts in the exercise of their discretion when reviewing Section 1782 discovery requests:

> (1)  [W]hether the person from whom discovery is sought is a participant in the foreign proceeding;
>
> (2)  [T]he nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance;
>
> (3)  [W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and
>
> (4)  [W]hether the discovery requests are unduly intrusive or burdensome.

*Nokia Corp.*, 2007 WL 1729664, at *2 (internal quotation marks omitted).

## A.  The Subpoenas Improperly Ask This Court to Interfere in a Foreign Matrimonial Action.

All four *Intel* factors weigh heavily in favor of vacating the Court's Order and quashing or staying the subpoenas.  But before evaluating those factors on their own terms, the Court should consider that this case concerns a Russian matrimonial dispute.  This Court lacks statutory power to handle "issues that arise out of conflicts over divorce, alimony, and child

custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992).  That is no less true when issues arise out of a foreign divorce.  *See Csibi v. Fustos*, 670 F.2d 134, 135 (9th Cir. 1982) (Romanian marriage).  These principles govern standing, *see*, *e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004), and inform the duty to abstain "in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody," *Ankenbrandt*, 504 U.S. at 705.  Thus, "[e]ven when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Chambers v. Michigan*, 473 F. App'x 477, 479 (6th Cir. 2012) (citation omitted).

This Court should abstain "if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Ankenbrandt*, 504 U.S. at 706.  The Second Circuit has directed that a federal court "presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination" in the courts assigned to handle them in the first instance. *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990).  That "full and fair opportunity" in the Russian courts is a fundamental premise of Petitioner's application. *See also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973) (Friendly, J.).  As the Sixth Circuit has held, even when "a domestic relations case may meet the technical requirements" for federal jurisdiction, "federal courts traditionally have refrained from exercising jurisdiction over cases which in essence are domestic relations disputes." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215, 1217 (6th Cir. 1981) (ordering abstention because the district court first would have to determine what and how much [Plaintiff's] support obligations are").

The instant Section 1782 application raises numerous "marital" issues of the type contemplated by these cases.  For example, Petitioner's application is fundamentally premised on the assumption that the assets on which she seeks discovery are "marital assets."  But that issue seems in doubt, given the February 25, 2014 decision of the Magistrate Judge that the parties' marital relationship ended in January 2007.  *See supra* at 4; Ex. 3 at 2.  Thus, a threshold issue bearing on Petitioner's requests is whether assets targeted by her subpoenas are, in fact, "marital assets" at all.  It is plainly within this Court's discretion to await further guidance given this fundamental gateway issue.

Although Petitioner will no doubt assert that the Russian courts have mishandled divorce and asset division proceedings, federal courts regularly defer to Russian courts under the *forum non conveniens* doctrine.  *See Overseas Media Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 617-18 & n.5 (S.D.N.Y. 2006), *aff'd*, 277 F. App'x 92 (2d Cir. 2008); *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 709 (S.D.N.Y. 2003).  There is likewise no reason for this Court – particularly given the liberal limitations rules applicable to Russian asset division proceedings, *see* Dyuzheva Decl. ¶¶ 5-6 – to assume Russian courts would wrongfully deprive Petitioner of marital assets to which she is entitled.  Petitioner's Section 1782 application is *premised* upon the idea that the Russian courts will fairly resolve the Potanins' disputes.  If this were not the case, the evidence Petitioner seeks would make no difference in the Russian courts.  She would then lack Article III standing.  The Court should abstain, and quash the subpoenas or stay them pending a request for assistance or guidance from the relevant court.

## B.  Under *Intel* Analysis, the Instant Discovery Is Improper.

If the Court does not abstain pursuant to the analysis set forth above, and instead reaches the *Intel* factors, each of those factors counsels that the Court should not exercise its discretion to allow discovery, and should instead vacate the Order and quash or stay the subpoenas.

13

**1. The Subpoenas Improperly Seek Information Petitioner Should Seek from Potanin.**

Under the first *Intel* factor, "[Section] 1782 aid is both unnecessary and improper" if "the evidence [sought] is available to the foreign tribunal." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *see also Intel*, 542 U.S. at 264. The use of Section 1782 to obtain information best available from parties to the foreign proceeding is strongly discouraged under this factor. For example, in *In re IPC Do Nordeste*, the petitioner sought documents from Dow Chemical, the corporate parent of its adversary in the foreign proceeding. 2012 WL 4448886, at *1. Although Dow Chemical was not a party to the foreign proceeding, the "information sought in the subpoenas . . . would be in the possession of" petitioner's foreign adversary. *Id.* at *5. As a result, the foreign court had "the power to order the production of the evidence sought" by the petitioner, and the Court quashed the subpoenas in their entirety. *Id.* at *1, *6; *see Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("[F]or all intents and purposes," petitioners seek discovery from "opponent in the German litigation.").

Here, Petitioner is seeking documents relating to assets, bank accounts, and other interests held by Potanin, a party to an asset division proceeding in Russia. The premise of Petitioner's discovery is that Respondents "are expected to have knowledge, documents, and information regarding . . . the current or former locations of (and amounts of) Interros and Potanin assets." Dkt. 2, Mem. of Law 3. Petitioner's declaration, however, states that Respondents have been, at best, merely vendors to her and provided travel-related services including processing payments for "transportation companies, hotels, restaurants, tutors, and other service providers." Dkt. 2-2, Potanina Decl. ¶ 24. Aside from the basic point that information regarding payment of expenses is likely to be of only indirect relevance to the "size of [Potanins'] marital estate," Dkt. 2-6, Ryabchenko Decl. ¶ 8, information about that "marital

14

estate" is certainly available from Potanin himself.  Petitioner has made no showing whatsoever

that she cannot get such information, at least insofar as the Russian court considers it relevant,

from Potanin himself – and, for that matter, does not expressly state that she herself does not

know how these vendors were paid.  Any of Petitioner's allegations that Potanin has refused to

share information about assets, *see* Dkt. 2-2, Potanina Decl. ¶¶ 12, 16, 23, are inapposite because

the only relevant issue is whether a Russian court could compel him to do so.  It is "abuse [of

discovery process] for a party to seek discovery in a federal district court that it could obtain in

the foreign jurisdiction," *In re IPC Do Nordeste*, 2012 WL 4448886, at *8, and Petitioner is

engaged in just such abuse of process here.

      Although Respondents may be beyond the Russian court's jurisdiction, Potanin is not.

Because Petitioner appears to have invoked no judicial process in Russia to obtain information

she seeks from Respondents from Potanin, the first *Intel* factor weighs heavily against discovery.

### 2. The Subpoenas Should Be Quashed or Stayed as Premature Based on the Nature and Early Stage of the Foreign Proceedings.

      The second and third *Intel* factors permit courts to consider "the nature of the foreign

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . .

court . . . to U.S. federal-court judicial assistance," as well as whether the request "conceals a[n]

attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."

*In re IPC Do Nordeste*, 2012 WL 4448886, at *6 (citing *Intel*, 542 U.S. at 264-65).  These

factors weigh heavily in favor of quashing or staying discovery, at least until there is a request

for information or guidance from the appropriate court as to what evidence would be useful.

      Russian law provides a comprehensive procedure for resolution of matrimonial disputes

and asset division.  *See* Dyuzheva Decl. ¶ 4.  Among other things, a Russian court adjudicating

an asset division case would determine the ex-spouses' separation date and can treat all

15

post-separation assets as the ex-spouses' individual property. *Id.* ¶¶ 4, 9. In fact, the Magistrate

Judge presiding over the Potanins' divorce already has found that "any marital and family

relations between the parties have been discontinued since January 2007," Ex. 3 at 2, a decision

binding on any subsequent proceedings between the parties once it enters into force, Dyuzheva

Decl. ¶ 13. Because all of the discovery sought from Respondents dates from 2007 onward, the

need for such discovery here very well could be eliminated. Conversely, if the Russian court

holds that evidence of post-2007 assets, including the type of evidence sought from Respondents,

would be useful to it, it can say so, and discovery can be ordered on the basis of the Russian

court's particularized guidance. *Id.* ¶ 15.

        These issues are within the competence of the Russian courts to decide, and the answers

could dramatically shape how this Court manages Section 1782 discovery. *See, e.g.*, Ex. 8, *In re*

*App. of Parmalat Brasil S.A.*, No. 11-Misc-00077-P1, at 7 (S.D.N.Y. 2011) (in light of "the

infancy of the Brazilian proceedings . . . some development of those proceedings may well be in

order prior to beginning the § 1782 discovery process"); *Aldunate v. Aldunate*, 3 F.3d 54, 60 (2d

Cir. 1993) ("[A] determination of discoverability under the laws of the foreign jurisdiction is a

useful tool in their exercise of discretion under section 1782."). Considering abstention for

matters "on the verge" of matrimonial law in the context of the "nature of the foreign tribunal

[and] the . . . proceedings underway abroad" counsels staying the proceedings, at a minimum,

pending guidance from the Russian court. Indeed, if a litigant sought a commensurate subpoena

from this Court in connection with a contentious divorce in Detroit, there is no question that this

Court would have to abstain. The result should be no different in the Section 1782 context.

        When faced with such lack of guidance in foreign matrimonial proceedings, district

courts have granted discovery only when petitioners sought very limited documents. *See*, *e.g.*,

*London v. Does 1-4*, No. 07-15164, 2008 WL 2178602, at *2 (9th Cir. 2008) (request for

"identifying information" about email accounts and "not the content of any communication"); *In*

*re Mak*, No. C12-80118, 2012 WL 2906761, at *1 (N.D. Cal. 2012) (single deposition).  At the

same time, district courts have been wary of extensive discovery requests when a petitioner's

submission "leaves it to the Court to speculate as to what legal effect the requested documents

will have in a divorce proceeding conducted pursuant to [foreign] law."  *In re Marano*,

No. CV-09-80020-Misc, 2009 WL 482649, at *3 (N.D. Cal. 2009); *see Kwong Mei Lan Mirana*

*v. Battery Tai-Shing Corp.*, No. C08-80142-Misc, 2009 WL 290459, at *2 (N.D. Cal. 2009)

(foreign court ordered that information sought in United States was "relevant to its proceeding").

      Petitioner sought broad-ranging Section 1782 discovery before any asset division

proceeding had been filed, claiming evidence was needed for the February 25 divorce hearing.

That *ex parte* representation was obviously inaccurate, *see supra* at 4, and indicates a willingness

to seek discovery unnecessarily.  Although courts have held that a petitioner need not exhaust

discovery abroad before seeking Section 1782 assistance, courts can, and should, "properly

consider a party's failure first to attempt discovery measures in a foreign jurisdiction."  *See In re*

*IPC Do Nordeste*, 2012 WL 4448886, at *9.

      As a court in *In re IPC Do Nordeste* recently pointed out, when "one Brazilian

corporation . . . travel[s] to the United States to seek information regarding a second Brazilian

corporation . . . from a third party . . . for use in a case pending in Brazilian court, . . . [o]ne

reasonable explanation is that [the petitioner] is attempting to circumvent proof-gathering

restrictions of the Brazilian court."  2012 WL 4448886, at *7.  Here, Petitioner, a Russian

national, is seeking discovery regarding Potanin, another Russian national, from a U.S. third

party, purportedly for use in a case pending in a Russian court.  "Because rational actors do not

needlessly increase their own litigation costs," *id.*, it is reasonable to assume that Petitioner seeks to circumvent proof-gathering restrictions in Russia,[5] but even if that is not so, Petitioner's "conduct contravenes an express policy of . . . providing efficient assistance to participants in international litigation," *id.* (internal quotation marks omitted).

As another district court recently observed, "[i]t would create a perverse system of incentives – one counter to the efficiency and comity goals of § 1782 – to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." *In re App. of Kreke Immobilien KG*, No. 13-Misc-110, 2013 WL 5966916, at *6 (S.D.N.Y. 2013); *see also In re App. of Mare Shipping Inc.,* No. 13-Misc-238, 2013 WL 5761104, at *5 (S.D.N.Y. 2013) (denying discovery when petitioner "had not first sought production in the foreign forum" (citation omitted)).  Granting Petitioner's Section 1782 application would certainly create perverse incentives, especially given that Petitioner may be seeking discovery for purposes other than the pending Russian proceeding.  *See supra* at 5.

Allowing Russian proceedings to develop further – and the Russian court to articulate what evidence it would deem relevant – would not prejudice Petitioner.  Russian law provides a liberal regime for bringing successive asset division claims for at least three years following the divorce.  *See supra* at 5.  Although Petitioner has claimed that she and her minor son "have been cut off from family funds" and delay depletes her resources, Dkt. 7-9, Pet'r Opp'n Ex. 9 at 18, Petitioner was recently awarded roughly $236,000 *per month* in child support, she reportedly stands to receive $70 million in the currently pending Russian asset division proceeding, *see supra* at 4, and she and her son recently closed on a $6 million estate, Ex. 5.  Petitioner plainly is

---

[5]      To the extent that Petitioner asserts that the first *Intel* factor weighs in her favor because Russian law does not contemplate discovery of one's spouse in an asset division case, she admits that her Section 1782 application seeks to "circumvent foreign proof-gathering restrictions."

not destitute, and if the cost of eight Section 1782 petitions is a concern for her, that is another reason to quash Section 1782 discovery that could very well turn out to be completely wasteful.

### 3. The Discovery Requested Is Unduly Burdensome.

Under the fourth *Intel* factor, discovery is improper if "the discovery request is 'unduly intrusive or burdensome.'" *In re IPC Do Nordeste*, 2012 WL 4448886, at *8 (citing *Intel*, 542 U.S. at 265). Although the parties' meet-and-confer discussions have resulted in some narrowing of Petitioner's document requests, the discovery sought is nevertheless unduly burdensome, and this factor weighs heavily in favor of quashing the subpoenas.

As set forth in Atanassov's Declaration, Cosmopolitan – a small business that Atanassov runs with the assistance of only his wife – operates nearly around the clock to provide a range of services to Russian-speaking travelers, virtually all of whom live outside the United States. *See* Atanassov Decl. ¶¶ 5-8. The two categories of documents Petitioner requests span a period of four and seven years, respectively, and would require Respondents to search for, collect, and produce information that demonstrably is irrelevant to the "current or former locations of (and amounts of) Interros and Potanin assets." Dkt. 2, Mem. of Law 3.

Searching for, collecting, and producing these documents would entail a significant disruption to Respondents' small business, *see* Atanassov Decl. ¶¶ 11-17, which the Court should not countenance. *See In re App. of Auto-Guadeloupe*, No. 12 MC 221, 2012 WL 4841945, at *10 (S.D.N.Y. 2012) (fourth *Intel* factor counsels quashing subpoena that "compel[s] respondent] to undertake an unduly burdensome, time-consuming, and expensive search of its files for many documents that are irrelevant"); *cf. In re Kreke Immobilien KG*, 2013 WL 5966916, at *7 ("[C]ourts should be more inclined to grant applications that seek either a single document or only those documents relating to a particular event." (citations omitted)). It is likewise inappropriate for Petitioner to seek discovery from a third party – in this case, a small

19

business owner – of information that can be obtained from a more convenient and less burdensome source, Potanin.  *See In re IPC Do Nordeste*, 2012 WL 4448886, at *9 ("[E]ither the evidence can be obtained from more convenient and less burdensome source, [the foreign adversary], or the evidence cannot be obtained from [the foreign adversary] because of [foreign country's] proof-gathering restrictions and policies.  In any case, the final *Intel* factor weighs in favor of [the respondent]." (citation omitted)).  It is Petitioner's duty under the Federal Rules to avoid imposing undue burden or expense on a third party, *see* Fed. R. Civ. P. 45(d)(1), and even her requests as narrowed should be quashed as unduly burdensome to Respondents.

## III.   ALTERNATIVELY, THE COURT SHOULD STAY DISCOVERY OR LIMIT PETITIONER'S REQUESTS TO THE CATEGORIES OF DISCOVERY CONTINGENTLY AGREED BY THE PARTIES

For the reasons above, Petitioner's subpoenas represent an improper use of Section 1782 and should be quashed.  If the Court is not inclined to do so, however, the *Intel* considerations weigh strongly in favor of staying enforcement to allow the foreign proceeding to progress before Respondents are put to the burden of the discovery sought.  *See, e.g.*, *Malev Hung. Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 102 n.5 (2d Cir. 1992) (district court could stay Section 1782 subpoena pending the submission of a discovery plan to the foreign court); *Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401, 406 (7th Cir. 2004) (reversing grant of discovery pending determinations of relevancy in the foreign proceedings).  The Court should thus stay the discovery pending a request for assistance from the Russian courts, which would effect Section 1782's aim of "providing efficient assistance" to foreign litigants, *In re IPC Do Nordeste*, 2012 WL 4448886, at *4 (citation omitted), and mitigate the subpoenas' burden by allowing this Court to tailor discovery once the scope of any asset division proceeding is known.

Were the Court nevertheless to permit enforcement of the subpoenas now, the Court should, at a minimum, credit the contingent agreements the parties reached and limit document

discovery to the two categories of documents on which the parties had agreed before reaching an impasse in their meet-and-confer negotiations. Specifically, as set forth in the Respondents' March 27 progress report, *see* Dkt. 12 at 6, and adopted by Petitioner in her March 28 statement, *see* Dkt. 13 at 3, the parties agreed to a reduced scope of document requests limited to:

- Documents showing incoming payments for travel and expenses of Potanin, Petitioner, and their children or grandchildren made to Respondents' bank accounts for the period from January 1, 2007 to the present, as well as emails between Respondents and two individuals identified by Petitioner's counsel, Elena Kondratova and Svetlana Ermakova, relating to such transactions; and

- Documents showing Respondents' payments to hotels, schools, tutors, and real estate agents relating to travel or expenses of Potanin, Petitioner, and their children or grandchildren for the period from January 1, 2010 to the present, which would include Respondents' credit card statements showing the payments to the above-mentioned vendors and other documents such as invoices, hotel confirmations, and emails relating to such payments.

The parties further agreed that, should the documents to be produced contain non-responsive information such as payments relating to Respondents' other clients, such information could be redacted by Respondents. *See* Dkt. 12 at 6, 8; Dkt. 12-4 at 2. Should the Court order any discovery, it should also be conditioned on the entry of a protective order.

### A. To the Extent the Dispute Over ESI Discovery Persists, the Court Should Deny It as Improper.

As the Respondents' March 27 report to the Court stated, the parties – at least as of that date – appeared to have an unresolved dispute regarding ESI Discovery. *See* Dkt. 12 at 8-9. In Petitioner's statement submitted today, she makes a passing reference to that dispute, *see* Dkt. 13 at 2, but then does not mention it as an area in which the Court's assistance may be required, *see*

*id.* at 3.  Respondents understand Petitioner's statement to mean that Petitioner has decided not to seek ESI Discovery from Respondents and that this dispute therefore has been resolved.

Should Petitioner nevertheless request ESI Discovery – as she should not be permitted to do in light of her statement to the Court – the Court should deny any such request.  Atanassov has not deleted any documents, including emails, potentially responsive to Petitioner's subpoenas since learning of them.  *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (duty to preserve emails arises when custodian "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation").  Further, there is no reason to believe that the emails he deleted many months ago would even be recoverable or would contain any responsive documents.  The uncertainty of the availability and relevance of any ESI Discovery is in stark contrast to the burden, disruption, and inconvenience it would present to Respondents.  Respondents' business is crucially dependent on Atanassov's responsiveness to his clients who contact him at all hours of day and night and expect immediate responses.  Atanassov Decl. ¶¶ 8-9.  There is simply no legitimate reason for which to put the Respondents to the disruption and intrusiveness of ESI Discovery under the circumstances.

**B.  The Court Should Deny Petitioner's Request to Depose Atanassov as Waived and Alternatively as Improper.**

The Court also should deny Petitioner's request to depose Atanassov, renewed at the last minute after what Petitioner concedes had been "*hours* of meet and confer discussions," Dkt. 13 at 2 (emphasis in original), and after Petitioner had made a written proposal, only one day earlier, "memorializing Mrs. Potanina's position" without any reference to a deposition, Dkt. 12-4 at 1; *see supra* at 7.  Petitioner has waived this request by not raising it in the hours of the meet and confer discussions or in the written statement setting forth her position.

In her statement filed with the Court today, Petitioner attempts to revive that request by claiming that it was Respondents' responsibility (1) to raise it in the Rule 45 subpoena objections and responses served on March 24 and (2) to infer from Petitioner's willingness to discuss affidavits in lieu of depositions in unrelated Section 1782 proceedings, and its silence with regards to a deposition in this matter in the meet-and-confers, that Petitioner's "position" was intended to address only documents, not all of her discovery requests.  Neither claim has merit.

*First,* Rule 45 explicitly requires Respondents to respond in writing only to the *duces tecum* portions of the subpoenas, which Respondents timely did.  *See* Dkts. 12-2, 12-3. Moreover, Atanassov explicitly stated that "[t]he fact that these objections and responses do not address the deposition requested by Petitioner *is not, and should not be deemed to be, a concession that the deposition request is valid, or a waiver of any of the rights of Atanassov to challenge the deposition request in any respect.*" Dkt. 12-2 at 2 (emphasis added). Cosmopolitan's objections and responses did not contain a similarly worded qualification for the simple reason that Petitioner failed to notice a deposition of Cosmopolitan's Rule 30(b)(6) representative properly.  Although Petitioner's March 28 statement appears to suggest a "corporate deposition" had been noticed, Dkt. 13 at 1, the subpoena issued to Cosmopolitan fails to check the box "Testimony" or to provide a date or time for any such deposition.  *See* Atanassov Decl. Ex. A at 4.[6]

*Second*, Petitioner has provided no basis for her claim that "the issue of respondents' depositions was never broached" during the hours of meet and confer discussions should have

---

[6]      This Court should not grant Petitioner leave to re-serve a subpoena *ad testificandum* on Cosmopolitan and, should the Court hold that a Rule 30(b)(6) deposition was duly noticed, it should be quashed.  It is duplicative of the request issued to Atanassov personally, as well as unduly burdensome because it would require Atanassov to review large quantities of documents in order to "give complete, knowledgeable and binding answers on [Cosmopolitan's] behalf." *Convertino v. U.S. Dep't of Justice*, No. 07-13842, 2013 WL 153311, at *4 (E.D. Mich. 2013).

led Respondents to assume that Petitioner indeed sought Atanassov's deposition (or, for that matter, had any intention of serving a valid *ad testificandum* subpoena on Cosmopolitan). In the meet and confer discussions, Respondents' counsel consistently have stressed the importance of a global settlement of all discovery issues and – as Petitioner concedes – specifically requested that Petitioner memorialize her position on such a settlement in writing to avoid any misunderstanding. That written position, submitted in the March 26 letter by Petitioner's counsel, makes no mention of a deposition. *See supra* at 7.

Even if it had not been waived, however, Petitioner's request to depose Atanassov should be denied as unduly burdensome and unnecessary in light of the agreed upon document production. In her Section 1782 application, Petitioner claims that she is seeking discovery "regarding marital assets." Dkt. 1, App. for Disc. 1. Setting aside that even Petitioner's narrowed document requests go far beyond that goal, *see supra* at 6-7, Petitioner has not articulated any basis to believe that Atanassov, a travel agent who organizes travel, accommodation, and entertainment for his clients, *see* Atanassov Decl. ¶¶ 5-6, 10, would have any information whatsoever regarding her purported "marital assets." Instead, the deposition request appears to be an attempt to harass Atanassov and to disrupt his business by forcing him to take time out of his very busy work schedule to indulge Petitioner's fishing expedition.

Finally, if the Court were to order discovery going beyond the agreed categories of documents, *see supra* at 21, it should order Petitioner to reimburse Respondents for the significant expenses, including reasonable attorneys' fees, they would incur in complying with the subpoenas before any document production occurs. *See, e.g.*, *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190-91 (S.D. Ohio 2010) (requesting party should pay significant costs when non-party lacks interest in the outcome of the case, cannot more

24

readily bear the costs than the requesting party, and when the litigation lacks public importance);

*Legal Voice v. Stormans Inc.,* 738 F.3d 1178, 1184 (9th Cir. 2013); *In re Law Firms of McCourts & McGrigor Donald,* No. M19-96, 2001 WL 345233, at *3 (S.D.N.Y. 2001).

## CONCLUSION

For the foregoing reasons, the Court should vacate the Order and quash the subpoenas issued to Respondents or, alternatively, stay or sharply limit enforcement of the subpoenas, and grant such further relief as requested above.  Should the Court order any discovery, it should stay its decision pending appeal to the United States Court of Appeals for the Sixth Circuit.

Dated:  March 28, 2014

BOWMAN AND BROOKE LLP
By:____/s/ Thomas P. Branigan_____
Thomas P. Branigan (P41774)
Lawrence C. Mann (P32223)
Attorneys for Respondents and Movants
Nikolai Atanassov and Cosmopolitan Travel & Tours, Inc.
41000 Woodward Ave., Suite 200 East
Bloomfield Hills, MI 48304
Phone: 248.205.3300
tom.branigan@bowmanandbrooke.com
larry.mann@bowmanandbrooke.com

DEBEVOISE & PLIMPTON LLP
Steven S. Michaels*
Yeugenia (Jane) Shvets*
919 Third Avenue
New York, NY 10022
Tel.:  +1 (212) 909-7265
Fax:   +1 (212) 909-6836
ssmichaels@debevoise.com
jshvets@debevoise.com
*Admission pending

*Counsel for Movants and Subpoena Respondents*
*Cosmopolitan Travel & Tours Inc. and Nikolai Atanassov*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Brian C. Summerfield
> Bodman PLC
> 1901 St. Antoine Street
> 6th Floor at Ford Field
> Detroit, MI 48226
> 313.259.7777 / 313.393.7579 fax
> bsummefield@bodmanlaw.com

> By:     /s/ Thomas P. Branigan
>          Thomas P. Branigan (P41774)
>          Lawrence C. Mann (P32223)
>          Attorneys for Respondents and Movants
>              Cosmopolitan Travel & Tours, Inc. and Nikolai
>              Atanassov
>          41000 Woodward Ave., Suite 200 East
>          Bloomfield Hills, MI 48304
>          248.205.3300 ph / 248.205.3399 fax
>          tom.branigan@bowmanandbrooke.com
>          larry.mann@bowmanandbrooke.com